## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENNETH D. WHITE,

                    Petitioner,

v.                                   **Case No. 22-CV-00546-SPM**

UNITED STATES OF AMERICA,

                    Respondent.

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Before the Court is an Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 filed by Petitioner Kenneth D. White, an inmate incarcerated at the Forrest City Low Federal Correctional Institution in Forrest City, Arkansas. (Doc. 9). Within the Motion, his Supplement (Doc. 18), and his Response to the Government's Response (Doc. 21), White raises various arguments attacking his conviction. For the following reasons set forth, the Petition is **DENIED**.

### RELEVANT FACTS AND PROCEDURAL HISTORY

On May 5, 2021, a jury returned a verdict finding White guilty of travel with intent to engage in illicit sexual conduct in violation of 28 U.S.C. § 2423(b). *See United States v. White*, 20-cr-40051-SPM (May 5, 2021) (Doc. 50). The Court sentenced White to 151 months in the custody of the Bureau of Prisons. *See id.* (Doc. 73). White appealed his judgment to the Seventh Circuit on July 27, 2021. *See id.* (Doc. 76); *see United States v. White*, No. 21-2381 (7th Cir. 2022). White filed a Motion to Dismiss

Appeal on March 1, 2022, which the Seventh Circuit granted the same day. *See id.* (Docs. 20, 21).

White subsequently filed a § 2255 Petition attacking his sentence on March 17, 2022. (*See* Doc. 1). The Court ordered White to file an amended motion (*see* Doc. 8) which was filed on November 14, 2022. (*See* Doc. 9). The Court granted White leave to file a Supplement, which was filed on May 2, 2023. (*See* Doc. 18). The Government responded to the Motion on June 1, 2023. (*See* Doc. 20). The Court granted White leave to file a response, which was filed on June 30, 2023. (*See* Doc. 21). White's Amended Motion broadly raises the following claims: ineffective assistance of counsel (Claim 1); withholding exculpatory evidence (Claim 2); prosecutorial misconduct (Claim 3); a collateral attack on his sentence (Claim 4); and actual innocence (Claim 5).

## APPLICABLE LEGAL STANDARDS

Relief under 28 U.S.C. § 2255 is limited. Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 may be used only to correct errors that litigate the sentencing court's jurisdiction or are otherwise of constitutional magnitude. The United States Court of Appeals for the Seventh Circuit has emphasized that relief under § 2255 is "available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878 (7th Cir. 2013) (quoting *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)); *see Harris v. United States*, 366 F.3d 593, 594 (7th Cir.

2004); *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991). Section 2255 cannot be used as a substitute for a direct appeal or to relitigate issues decided on direct appeal. *See Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004); *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003), *cert. denied*, 540 U.S. 926 (2003).

Section 2255 requires a court to vacate, set aside or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "[R]elief under § 2255 is an extraordinary remedy because it asks the district court to essentially reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007).

ANALYSIS

## I.      Ineffective Assistance of Counsel

White raises various claims of ineffective assistance of counsel, which may be brought for the first time under a § 2255 motion. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. James*, 635 F.3d 909, 916 (7th Cir. 2011). Under the law of this Circuit, because counsel is presumed effective, White "bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Trevino,* 60 F.3d 333, 338 (7th Cir. 1995). Ineffective assistance of

counsel claims are evaluated under the two-prong test first enumerated in *Strickland v. Washington*, 466 U.S. 688, 690, 694 (1984). *See McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 690, 694). "The Sixth Amendment right of effective assistance of counsel applies to a criminal defendant's trial, sentencing, and the first appeal of right." *Jones v. Welborn,* 877 F. Supp. 1214, 1219 (S.D. Ill. 1994).

Under *Strickland*, the defendant "must demonstrate: (1) 'that counsel's performance was deficient,' and (2) 'that the deficient performance prejudiced the defense.'" *Thompson v. Vanihel,* 998 F.3d 762, 767 (7th Cir. 2021) (quoting *Strickland*, 466 U.S. at 687). To satisfy the performance prong, the defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. To prove prejudice, the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court is not required to analyze both the performance and prejudice prong, because the failure to satisfy either prong will be fatal to the claim. *See Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir. 1993); *United States v. Slaughter,* 900 F.2d 1119, 1124 (7th Cir. 1990).

## A. Motion to Suppress/Objection to Admission of Interview

White first argues that his attorney should have either filed a motion to suppress or should have objected at trial to the admission of White's statements during his interrogation by law enforcement because he claims he requested an

attorney. (Doc. 9, pp. 4–6 (citing *id.*, Ex. 4, pp. 6, 21)). White specifically points to his statements in which he says the following: (1) he "would probably rather an attorney be present"; (2) "would you say it's better to move forward, or should I ask for an attorney?"; and (3) "[s]o, you're saying it's better to go ahead and look at the phone than to call an attorney?" (Doc. 9, p. 4 (citing *id.*, Ex. 4, pp. 4, 21)). The Government argues that White's counsel's performance meets the burden of being reasonable, as Attorney Bundrick justified his decision in two separate ways. (*See* Doc. 20, p. 14). First, Attorney Bundrick stated that, because White made "ambiguous" statements about wanting an attorney after being mirandized, he "felt [White's] statements were ambiguous enough that a reasonable officer would not perceive them as an unequivocal request to consult with an attorney." (*Id.* (quoting *id.*, Ex. 1, ¶ 12A)). Second, Attorney Bundrick states that, because White demonstrated that he would not be able to take the stand in his own defense, "there were a number of helpful statements in Mr. White's interview with law enforcement which were helpful" in making his case. (*Id.*, p. 15 (quoting *id.*, Ex. 1, ¶ 12A)). The Government additionally argues that *Moore v. Czerniak*, 534 F.3d 1128 (9th Cir. 2008), *reversed by Premo v. Moore*, 562 U.S. 115 (2011), which White cites favorably, is distinguishable from the instant case.

As the Supreme Court noted when reversing the Ninth Circuit in *Premo*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." 562 U.S. at 122 (citing *Strickland*, 466 U.S. at 690). Attorney

Bundrick has provided sufficient tactical and strategic justification here for his decision to not seek to suppress White's statements in interrogation, as the Government asserts. Attorney Bundrick stated that White's references to an attorney during interrogation were "ambiguous enough that a reasonable officer would not perceive them as an unequivocal request to consult with an attorney." (Doc. 20, Ex. 1, ¶ 12A). *See United States v. Wysinger*, 683 F.3d 784, 794 (7th Cir. 2012) (reviewing cases and stating that "I want an attorney before making a deal" was a clear request for counsel while "[m]aybe I should talk to a lawyer" was not) (first quoting *Edwards v. Arizona*, 451 U.S. 477, 480 n.6 (1981); then quoting *Davis v. United States*, 512 U.S. 452, 462 (1994)) (citing *United States v. Shabaz*, 579 F.3d 815, 818–19 (7th Cir. 2009); *United States v. Lee*, 413 F.3d 622, 626 (7th Cir. 2005); *Lord v. Duckworth*, 29 F.3d 1216, 1221 (7th Cir.1994)). Comparing comparable caselaw, White's statements were not clear, unequivocal requests for an attorney and Attorney Bundrick's response is justified.

Moreover, White has not provided any details on how Attorney Bundrick's decision-making resulted in prejudice of any kind rather than general allegations. Thus, White has neither met the burden to prove the Attorney Bundrick's performance was objective unreasonable nor has he surmounted his burden to prove that Attorney Bundrick's performance resulted in prejudice.

### B. Failure to Investigate and to Call Witnesses

White next argues that "Bundrick failed to investigate beyond the Prosecutor's version of events" in that he did not review messages sent from other email accounts

White states that he could no longer access (but were still available on White's laptop). (*See* Doc. 9, pp. 6–7; Doc. 21, pp. 3–4). White argues that Attorney Bundrick "ignore[ed] the claims regarding such exculpatory evidence" (Doc. 9, p. 7) and failed to call certain character witnesses including Violet Egan and Jason Crocket (*id.*, p. 10–11).

The Government argues that the "duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up." (Doc. 20, p. 18 (citing *Rompilla v. Beard*, 545 U.S. 374, 382–83 (2005))). They argue that Attorney Bundrick concluded that the additional theories posited by White (that he was a "closeted bisexual and his interactions with the agent in this case were in an effort to engage in a sexual relationship with the agent, not the purported minor" and that White's "son had been convicted of an analogous offense in another jurisdiction and Mr. White was indignant about law enforcement's entrapment of his son") were not strategically valuable for White's defense. (Doc. 20, p. 19 (citing Doc. 9, ¶¶ 2A–B)). Attorney Bundrick stated he "did not find this information helpful to the defense of Mr. White's case, because it showed additional interest in incest and (in my view) sexual contact with minors." (*Id.*, Ex. 1, ¶ 3B).

On this point, Attorney Bundrick's responses evince the pursuit of a clear trial strategy. Additionally, while White claims that Attorney Bundrick "failed to pursue obvious leads provided by his client," he has not provided detail on how these actions caused prejudice in accordance with *Strickland*'s second prong. (Doc. 9, p. 7 (quoting *United States v. Tucker*, 716 F.2d 576 (9th Cir. 1983))). Moreover, White states that

he specifically told Attorney Bundrink not to call Violet Egan as a witness. (Doc. 21, p. 3). Thus, this second claim also fails both prongs of the *Strickland* test.

### C. Failure to Contest Alleged Perjury

Third, White claims that Attorney Bundrick failed "to challenge perjury by Agent Wainscott in both his FBI report and in his Grand Jury Testimony." (Doc. 9, p. 8 (citations omitted)). The Government argues that what White is actually challenging is certain testimony presented to the Grand Jury and that he is objecting to Attorney Bundrick's lack of cross examination of Agent Wainscott's credibility at trial. (Doc. 20, p. 21). The Government argues that "Mr. Bundrick subjected Agent Wainscott to meaningful, and thorough cross-examination" and the Attorney Bundrick was "concerned that juries react negatively when defendants or defense attorneys attack law enforcement" and, thus, "[w]hile sometimes that approach is helpful or even necessary, in this case I did not think that it would benefit us and I felt there was a substantial likelihood that it would harm the presentation of our case." (*Id.*, p. 22). The Government states that "Petitioner fails to demonstrate and offers no evidence of how Agent Wainscott would have testified if cross-examined further by his counsel." (*Id.*)

As before, White fails to allege exactly how White's performance in cross examining Agent Wainscott fell below an objective standard of reasonableness or had a prejudicial effect. He merely states that White did not perform his duty. (*See* Doc. 9, p. 8 (quoting *Thomas v. Lockhart*, 738 F.2d 304 (8th Cir. 1984))). Such an assertion is not sufficient here and, therefore, this claim also fails.

### D. Use of Entrapment Defense

White's next claim is that Attorney Bundrick "fabricated a trial strategy of entrapment." (*Id.*). He argues that "even though [Bundrick had] proof of perjury and [was] informed of other evidence, he chose to tell the jury that the petitioner was guilty but 'coerced' into it." (*Id.*, p. 10). In his Supplement, White also argues that, when he agreed to drive to Metropolis to meet Agent Wainscott, "the very act that I was assured to not be illegal became illegal." (Doc. 18, p. 3). The Government responds that "[t]o the contrary, this chosen trial strategy was not some figment of Mr. Bundrick's imagination, it was a . . . decision by the Petitioner." (Doc. 20, p. 22). They argue that "[c]ounsel's decision to present one theory of defense to the exclusion of another is a matter of trial strategy" and point to Attorney Bundrick's affidavit stating that he discussed this strategy with White, who approved its use. (*Id.* (quoting *United States ex rel. Gill v. Gramley*, 16 F.Supp.2d 924, 933 (N.D. Ill. 1988)) (citing Doc. 20, Ex. 1, ¶ 8)).

As Attorney Bundrick indicates that he discussed the use of the entrapment defense with White (which the latter approved), this evinces a strategic decision regarding White's case. White's conclusory allegations that Bundrick "fabricated" the entrapment defense do not provide any detail on how Bundrick's performance fell below an objective standard. While White claims that "Bundrick's strategy prejudiced the Petitioner's right to an effective defense," he does not provide any details on exactly how a different result at trial would have occurred but for Attorney Bundrick's performance. Therefore, neither prong in the *Strickland* test is met for this claim.

### E. Pressure to Plead Guilty and to Not Testify

White's final ineffective assistance of counsel claim argues that Attorney Bundrick "pressure[ed] petitioner not to testify on his own behalf" and "constantly ask[ed] if Petitioner wanted to take a guilty plea." (Doc. 9, pp. 9–10). White claims that Attorney Bundrick made "the pretrial meetings confrontational and demeaning . . . result[ing] in the Petitioner being too terrified to take the stand on his own behalf." (*Id.*, p. 10). The Government argues that "[a]s any good defense attorney should do, Mr. Bundrick advised Petitioner of his options, and gave his professional opinion, based on the evidence of the case, that a guilty plea may be in Petitioner's best interest." (Doc. 20, p. 23). The Government also points to excerpts from the trial transcript where this Court confirmed with White that he understood that he was waiving his right to testify on his own behalf. (*See id.*, pp. 23–25 (quoting *United States v. White*, 20-cr-40051 (Doc. 92))).

Like the others, White's claim here also fails. In attempting to prepare White for the rigor of testifying on his own behalf including being cross-examined by the Government, Attorney Bundrick intentionally practiced confrontational questioning styles so that White would not be rattled on the stand—this is common practice for any defense attorney and certainly does not belie a deviation from what is objectively reasonable. Attorney Bundrick states that White's poor performance in their practice questioning sessions raised serious doubts about whether he could testify at trial, leading to Bundrick's recommendation that White not testify. (*See* Doc. 20, Ex. 1, ¶ 12A). Moreover, White told this Court in no uncertain terms that he understood his

rights and the consequences associated with his refusal to testify. He cannot now argue that this was not the case. Therefore, White has failed to adequately allege a deviation from the standard of objective reasonableness or a prejudicial effect of his counsel's performance for any of his ineffective assistance of counsel claims in accordance with the *Strickland* standard discussed *supra*.

Additionally, White alleges various other ineffective assistance of counsel claims in his Supplement (Doc. 18, p. 12) and his Response to the Government's Response (Doc. 21, pp. 1–3). Most of these arguments are in the same vein as those already discussed or merely offer suggestions or state questions (*See* Doc. 18, p. 12 ("A digital forensic investigator could be a good request.")). These claims also fail to surmount the *Strickland* bar, as they offer only conclusory statements and White's own musings. For all of the foregoing reasons, all of White's ineffective assistance of counsel claims fail to meet the high bar required for such claims under *Strickland*.

## II.   **Withholding of Exculpatory Evidence**

White next argues, in a similar vein to his ineffective assistance of counsel claim regarding additional his email accounts, that the Government did not provide "transcripts" of those email accounts in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (*See* Doc. 9, pp. 11–12 (citing *Brady*)). He argues that the Government's "failure to provide the defense with evidence that Petitioner claims to be exculpatory is in and of itself prejudicial." (*Id.*, p. 12). The Government argues that this claim is procedurally barred because it was not raised in direct appeal and nonsensical because White had access to these accounts and, by his own admission, told Attorney

Bundrick about them. (*See* Doc. 20, pp. 25–27). They argue that "[t]o suggest that the government somehow did not disclose items defense counsel acknowledges possession of, attaches portions of this alleged 'exculpatory evidence' to pretrial motions, or the suggestion that the government did not provide Petitioner with his own emails . . . is wholly without merit [and] belied by the record." (Doc. 20, pp. 26–27). In his Response, White argues that the public defender assigned to his appeal advised him to pursue a § 2255 motion instead of a direct appeal "since none of [his] points were part of the record" and that she would "file an *Anders* brief because there, in her opinion, was not reason for her to proceed with [a direct appeal]." (Doc. 21, p. 1). He argues that this is a sufficient "outside source" to permit him to raise these issues on collateral attack instead of on direct appeal. (*Id.*).

On this point, even if the evidence White offers were admitted, he does not deliver a cogent argument; he argues that the conversations from the additional email accounts show that he tried to "'sound' different" by using different phrases and that he "never hinted in any conversation that [he] was the same person as the main conversation." (Doc. 21, p. 4). His claim that the evidence contained in the additional email accounts is exculpatory does not render it so. Even if it were, he cannot argue that *Brady* applies to evidence that White possessed and discussed with his defense attorney. Under *Brady*, "the prosecution has a duty to disclose material exculpatory evidence, and that reversible error has occurred if the prosecution has failed to disclose such 'material' evidence." *Carey v. Duckworth*, 738 F.2d 875, 877 (7th Cir. 1984) (citing *Brady*; *United States v. Agurs*, 427 U.S. 97 (1976)). Moreover, "[t]he mere

possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.* (citing *Agurs* at 109–10). Material evidence is defined as "that which 'creates a reasonable doubt that did not otherwise exist.'" *Id.* (citing *Agurs* at 112). Therefore, White's *Brady* claim is defective for multiple independent reasons: (1) the defense was already aware of the material in question; (2) the prosecution did not have access to the material in question; (3) the evidence was not exculpatory (3) even if the prosecution had the material in question and even if it were exculpatory, it is clearly not "material."

All of this aside, the Government is correct that such an argument is procedurally barred in a § 2255 motion, as it should have been raised in a direct appeal. White's statement that he did not pursue a direct appeal based on his public defender's advice is not sufficient, as "claims cannot be raised for the first time in a § 2255 motion if they could have been raised at trial or on direct appeal." *Sandoval*, 574 F.3d at 850. Put another way, White does not need to have actually pursued a direct appeal in order for claims that could have been raised on direct appeal to be procedurally barred. Therefore, this claim also fails.

## III.   Prosecutorial Misconduct

White next argues that AUSA Bloodworth "knowingly and willingly collude[d] with Agent Wainscott to provide false and otherwise prejudicial perjured testimony to the Grand Jury" because of alleged factual misrepresentation. (See Doc. 9, pp. 13–16). White claims that AUSA Bloodworth and Agent Wainscott misrepresented the

facts around use of the term "princess," including making it "appear that this was a term created by [White] and used to describe the fictitious minor" which was "highly prejudicial and tainted the jury's view." (*Id.*, p. 17). The Government argues that, "[a]s can be plainly seen by Petitioner's responses to various questions/answers given before the Grand Jury, he has an alternative explanation or context of the respective statement" and that "Petitioner in no way demonstrates 'perjury' and, further, does not explain or offer any support of 'collusion' amounting to 'prosecutorial misconduct.'" (Doc. 20, p. 27). The Government argues White's "counsel provided an alternate explanation for the government's argument in closing" with respect to the term "princess" and that, regarding the Government's arguments, "Petitioner provides no support or explanation of how or why this was 'prosecutorial misconduct' nor can he do so" as "[t]his was fair comment on the evidence." (*Id.*, p. 28). They also argue that, like White's claim as related to exculpatory evidence, that these claims are procedurally barred from consideration in a § 2255 petition because White failed to raise them on direct appeal. (*Id.*).

Like White's exculpatory evidence arguments, his claim as related to "prosecutorial misconduct" is meritless and procedurally barred. White failed to raise these issues on direct appeal and, even if he had, he provides no additional facts besides allegations that the Government proposed an explanation for his actions with which White disagrees. Moreover, "Perjury is defined as providing 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Bass*, 325

F.3d 847 (7th Cir. 2003) (citing *United States v. Jackson*, 300 F.3d 740, 749 (7th Cir. 2002)). White's counsel disputed the Government's narrative in his closing argument; the fact that White disagrees with the Government's presentation of its case does not render provided testimony "perjury." (*See* Doc. 20, p. 28). Thus, White's prosecutorial misconduct claim fails.

## IV.   Collateral Attack

White's fourth section of his Amended Petition advances a claim that "Section 2255 expressly provides for relief in circumstances where Petitioner's sentence was based, at least in part, on misinformation.'" (Doc. 9, p. 18 (citing *United States v. Tucker*, 404 U.S. 443, 447 (1972))). Here, White refers to his previously argued claims and states that "when viewed as a collective chain of events, it exceeds the 'misinformation threshold' in *Tucker* and prejudices the Petitioner[,] opening the proceeding for collateral attack." (*Id.*, p. 19). The Government does not address this claim separately as this argument predominantly repackages White's previous claims.

Notably, in his citation to *Tucker*, White does not include the qualification that the misinformation must be "of constitutional magnitude." *Tucker*, 404 U.S. at 447 ("For we deal here, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude."). In *Tucker*, the Supreme Court affirmed the judgment of the Court of Appeals which reversed and remanded a case for resentencing because two of the previous convictions considered by the District Judge were determined to

be unconstitutionally obtained under *Gideon v. Wainwright*, 372 U.S. 335 (1963). *Tucker* at 447 (citing *Gideon*). Thus, the Supreme Court determined that basing a sentence on constitutionally infirm convictions was sufficient error to elevate the issue to "constitutional magnitude." *Tucker*, 404 U.S. at 447. White's purported misinformation arguments do not rise to the level of the unconstitutional sentences in *Tucker* and the instant facts are clearly distinguishable, especially as his argument here recycles his previous claims. White's sentence was not based on constitutionally infirm convictions and, therefore, this claim thus must also fail.

## V.  Claimed Actual Innocence

White's final claim argues for his actual innocence. He relies again on the purported exculpatory email account evidence and also offers arguments: (1) that his exculpatory evidence shows that he was aware of the "catfishing persona" effected by Agent Wainscott the entire time; (2) that he was trying to "entrap the entrapers [sic]" because his son was arrested in a similar "catfishing scheme by the Government"; (3) that because he is an active participant in his minor son's life and because the fictitious minor here was the same age, that he could not have mistaken the purported daughter for a child of the same age; (4) that Wainscott pushed sex with the fictitious minor, not White; (5) that he is bisexual and only wanted to arrange a sexual encounter with the father and White's own girlfriend; (6) that he merely had candy in his car as a snack for his son and that he had a condom as a "responsible sexually active adult"; and (7) that no evidence was presented that White abused either of his own sons. (Doc. 9, pp. 20–21). The Government responds that "[t]he

exception [for actual innocence] is very narrow and requires 'factual innocence, not mere legal insufficiency.'" (Doc. 20, p. 28 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998))). "To support a claim of actual innocence, a petitioner must come forward with 'new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" (*Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995))). In light of this standard, the Government argues that "[n]one of this purported 'evidence' is new, none of it reliable, none of it is scientific, trustworthy, or critical physical evidence. Basically, Petitioner's argument fails to fall into the 'very narrow exception' of actual innocence – but rather is comment on the 'legal insufficiency' of the government's evidence." (Doc. 20, p. 29).

As is stated in *Schlup*, "[b]ecause such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." 513 U.S. at 324. DNA evidence not available at the time of conviction but subsequently analyzed represents one avenue for § 2255 relief for actual innocence. *See, e.g.*, *House v. Bell*, 547 U.S. 518 (2006). Here, White's purported "evidence" is merely repetition of previous arguments without any additional "scientific," "trustworthy eyewitness," or "critical physical evidence" presented. *Schlup* at 324. Therefore, White's actual innocence claim also fails.

## VI.  Default Judgment

In White's Response to the Government's Response to his Petition (Doc. 21), White purports to "submit a motion for default judgment on [his] claims that were

not disputed or mentioned within the Government's response" pursuant to 28 U.S.C. § 2248 and Federal Rule of Civil Procedure 55(a). (Doc. 21, p. 2). These claims include issues with law enforcement's search of White's phone; issues with the interview with Wainscott; his actual innocence and First Amendment claims; entrapment by estoppel; police enticement; speculation; "Code 1985(2) + (3) violations and further issues with the Grand Jury"; racketeering; purported lack of predisposition; and "other ineffective assistance of counsel claims." (*Id.*).

First, 28 U.S.C. § 2248 applies to petitions for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254 and is not applicable to § 2255 petitions. *See* Rules Governing Section 2255 Proceedings in United States District Courts, Rule 5 advisory committee's note ("Unlike the habeas corpus statutes (see 28 U.S.C. §§2243, 2248) §2255 does not specifically call for a return or answer by the United States Attorney or set any time limits as to when one must be submitted."). Moreover, even if it did apply, § 2248 establishes that all of the information in the *Government's response* is accepted as true, not that all of what the petitioner alleges is accepted as true; thus, the exact opposite of what White alleges here. Moreover, Federal Rule of Civil Procedure 55 applies in civil cases where the defendant has neither filed an appearance nor answered a complaint entirely. *See* Fed. R. Civ. P. 55. It is not applicable in § 2255 proceedings as here and, even if it did apply, the Government has responded to White's Petition. (*See* Doc. 20). Therefore, this claim is also meritless.

## VII.   Evidentiary Hearing

White has also requested an evidentiary hearing on his claims pursuant to § 2255(b). (*See* Doc. 21., p. 5). The Government argues that an evidentiary hearing is not required in this case if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." (Doc. 20, p. 9 (quoting 28 U.S.C. § 2255) (citing *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001); *Daniels v. United States*, 54 F.3d 290, 293 (7th Cir. 1995))). They argue that, because "[m]otions to vacate a conviction or sentence ask the district court to grant an extraordinary remedy to one who already has had an opportunity for full process," that this gravitates toward denial of an evidentiary hearing based on White's "factually and legally inadequate" Petition. (Doc. 20, p. 10 (quoting *Kafo v. United States*, 467 F.3d 1063, 1067–68 (7th Cir. 2006))).

This Court finds that an evidentiary hearing is not essential. *See Almonacid,* 476 F.3d at 521 (7th Cir. 2007); *see also* Rules Governing Section 2255 Proceedings in United States District Courts, Rule 4 ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."). White failed to provide the Court with a detailed and specific affidavit that demonstrated the actual proof of the allegations in his § 2255 Petition. *See Galbraith,* 313 F.3d at 1009 (7th Cir. 2002) ("It is the rule of the court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations

that go beyond mere unsupported allegations."). Additionally, while White requested that his first § 2255 Motion be used as his affidavit, his Amended Motion fully replaces his previous Motion and cannot be revived. (*See* Doc. 21, p. 1). Moreover, a request for a Motion to be used as an affidavit does not assist him in proving his claims. This argument is therefore meritless and White's Petition must be dismissed in the entirety.

## CONCLUSION

For the reasons set forth above, Kenneth D. White's Amended Motion to Vacate, Set Aside, or Correct Sentence filed pursuant to 28 U.S.C. § 2255 (Doc. 9) is **DENIED**. This action is **DISMISSED with prejudice**. The Clerk of Court shall enter judgment accordingly and close this case on the Court's docket.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings in United States District Courts instructs the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. 2253(c)(2) provides that a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."

To meet this standard, the petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming,* 676 F.3d

621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke,* 542 U.S. 274, 281 (2004)); *see Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

As for White's claims of ineffective assistance of counsel, withholding of alleged exculpatory evidence, prosecutorial misconduct, purported collateral attack, and actual innocence, White has not made a substantial showing of the denial of a constitutional right. Having thoroughly reviewed the record before the Court, the undersigned concludes that reasonable jurists would not find the disposition of that claim debatable or wrong. Accordingly, this Court **DENIES** issuance of a certificate of appealability.

**IT IS SO ORDERED.**

**DATED:  January 25, 2024**

> *s/ Stephen P. McGlynn*
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**